## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Teri Gayle Pfeiffer                                                    Plaintiff

v.                          No. 4:14-CV–230-BRW-JTR

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                         Defendant

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge Billy Roy Wilson.   A party to this dispute may file written objections to this recommendation.   An objection must be specific and state the factual and/or legal basis for the objection.   An objection to a factual finding must identify the finding and the evidence supporting the objection.   Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]   The objecting party must serve the opposing party with a copy of an objection.   Failing to object within 14 days waives the right to appeal questions of fact.[2]   If no objections are filed, Judge Wilson may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Teri Gayle Pfeiffer seeks judicial review of the denial of her application for disability insurance benefits.[3]  Pfeiffer claims she has been disabled since August 2010 when she lost her job as a registered nurse.  She bases disability on depression, sciatic nerve pain, cervical spinal stenosis, leg neuropathy, asthma, diabetes, GERD, hypothyroidism, and migraine headaches.[4]

**The Commissioner's decision**.   After considering the application, the Commissioner's ALJ issued a partially favorable decision.[5]  The ALJ determined Pfeiffer became disabled at age 55 and awarded benefits beginning at age 55.  The ALJ determined that before age 55, Pfeiffer had severe impairments — degenerative disc disease, diabetes, neuropathy, migraines, asthma, carpal tunnel syndrome, and depression[6] — but she could do some light work.[7]  Because a vocational expert

---

[3]SSA record at p. 128 (applying on Apr. 28, 2011 and alleging disability beginning Aug. 28, 2010).

[4]*Id*. at p. 182.

[5]*Id*. at p. 11.

[6]*Id*. at p. 13.

[7]*Id*. at p. 16 (placing the following limitations on light work: (1) frequent handling and fingering; (2) frequent rotation, flexion, and extension of the neck; (3) no concentrated exposure to fumes, odors, dusts, gases and poor ventilation; and (4) incidental interpersonal contact, tasks learned and performed by rote with few variables and little judgment, and simple, direct, concrete supervision).

identified available light work,[8] the ALJ determined Pfeiffer was not disabled before age 55 and denied the application for earlier benefits.[9]

After the Appeals Council denied a request for review,[10] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[11] Pfeiffer filed this case to challenge the denial of benefits before age 55.[12] In reviewing the decision, the court must decide whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]   This recommendation explains why substantial evidence supports the determination about Pfeiffer's ability to work before

---

[8]*Id*. at p. 52 (identifying machine tender, inspector, and assembler as available work).

[9]*Id*. at pp. 23-24.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

age 55.

**Pfeiffer's allegations**.  Pfeiffer claims she was disabled when she lost her job in August 2010.  She maintains the ALJ understated her back and neck impairments, and overstated her ability to use her hands.  She contends the ALJ erred in evaluating the credibility of her allegations of severe pain and limitations with the hands.  She says the ALJ failed to conduct a function-by-function analysis of her ability to work. She claims the ALJ cherry-picked the evidence to justify the decision.  For these reasons, she argues, substantial evidence does not support the decision.[14]

**Applicable legal principles**.  In reviewing a decision denying an application for disability benefits, the court must determine whether the decision is supported by substantial evidence in the record as a whole.[15]  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate to support the decision.[16]  The court must determine whether a reasonable mind would accept the evidence adequate to show Pfeiffer could do some light work before age 55.

"Light work involves lifting no more than 20 pounds at a time with frequent

---

[14]Docket entry # 14.

[15]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[16]*Slusser*, 557 F.3d at 925.

4

lifting or carrying of objects weighing up to 10 pounds."[17]  The ALJ reduced light

work by requiring: (1) no more than frequent handling and fingering; (2) no more than

frequent rotation, flexion, and extension of the neck; (3) no concentrated exposure to

fumes, odors, dusts, gases and poor ventilation; and (4)work involving incidental

interpersonal contact, tasks learned and performed by rote with few variables and little

judgment, and simple, direct, concrete supervision.  Pfeiffer says the ALJ conducted

no function-by-function analysis, but the ALJ's limitations evidence such analysis.

**The evidence doesn't support Pfeiffer's allegation of  disabling back and**

**neck pain**.  Pfeiffer relies, in substantial part, on allegations of disabling back and

neck pain, but allegations aren't enough to prove disability.  A determination about

a claimant's ability to work must be supported by medical evidence.[18]  The medical

---

[17]20 C.F.R. § 404.1567(b).

[18]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 404.1529  ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about

evidence shows degenerative changes in the lumbar and cervical spine that support Pfeiffer's complaints of low back and neck pain,[19] but treatment controlled her symptoms.[20] "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."[21]

---

the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[19]SSA record at p. 289 (Nov. 18, 2010 lumbar MRI showing bulging discs at levels L3/4 and L4/5, spinal canal stenosis at level L4/5, grade II spondylolisthesis at level L5/S1 likely bilateral spondylolysis, and chronic degenerative change of level L5/S1), p. 434 (May 31, 2011 CT myelogram confirms  congenital grade II spondylolisthesis at level L5/S1, but no significant canal stenosis or nerve root compression), p. 519 (Feb. 29, 2012 cervical MRI showing degenerative disc disease with disc osteophyte ridging and resulting spinal and foraminal stenosis at levels C4/5, C5/6, andC6/7), p. 640 (Mar. 27, 2012 cervical MRI shows multilevel degenerative disc disease and spondylolysis but no significant canal or nerve root compression) & p. 685 (Oct. 31, 2012 lumbar MRI shows post-surgical changes, grade II anterolisthesis at level L5, moderate spinal canal stenosis at level L3/4, and high grade foraminal stenosis for L5 nerve roots).

[20]*Id.* at p. 301 (Dec. 20, 2010 steroid injection decreased back pain by 90-95%), p. 296 (Feb. 26, 2011 injection helped for about a week), p. 462 (Aug. 16, 2011, doing well after surgery), p. 458 (Nov. 10, 2011, her back is feeling okay, no significant problems), p. 594 (Feb. 7, 2012, she's having some low back and neck pain, but she isn't worried about it), p. 590 (Feb. 29, 2012, she says medication helps her pain, but complains that pain keeps her from sleeping), p. 452 (Mar. 20, 2012, she had a couple of episodes of significant pain in the back radiating to buttocks that resolved after walking for 10 minutes; sciatic pain is returning but only about 30% of what it was before surgery) & p. 803 (May 14, 2012, she stopped the pain medication because it increased her appetite).

[21]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citation omitted).

**Pfeiffer's complaints about her hands surfaced too late to serve as a basis for benefits before age 55**.  An impairment must be disabling for a continuous period of not less than 12 months to serve as a basis for disability.[22]  Four months before age 55, Pfeiffer complained about right hand pain.[23]  Four months is insufficient to serve as a basis for disability before age 55.  She later complained about intermittent hand numbness, but she had reached age 55.[24]

**Medical opinion evidence supports the ALJ's determination about Pfeiffer's physical ability to work**.  In determining a claimant's ability to work, an ALJ asks a medical expert about whether the claimant's impairment(s) can reasonably be expected to produce alleged symptoms.[25]  The ALJ consulted three medical experts.  According to the experts, Pfeiffer could have done light work before age 55.[26]  A

---

[22]*See* 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits).  *See also* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[23]SSA record at p. 594 (Feb. 7, 2012, complaining about pain radiating to the right hand).

[24]*Id*. at p. 799 (Jun 15, 2012, reports of intermittent hand numbness appear to flow from carpal tunnel syndrome and cervical spinal stenosis).

[25]20 C.F.R. § 404.1529.

[26]SSA record at p. 351 (May 27, 2011), p. 375 (Oct. 20, 2011) & p. 448 (Feb. 2, 2012).

sometimes-treating physician provided the only contrary medical opinion.[27]   The physician reported numerous limitations, including the need to avoid pulmonary irritants.  This created a conflict.

When medical opinion evidence conflicts, the ALJ must resolve the conflict. In resolving a conflict, an "ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."[28]   Here, the ALJ credited the opinion to the extent it supported light work and the need to avoid pulmonary irritants, but otherwise rejected reported limitations as over-statement.[29]

Pfeiffer contends the ALJ cherry-picked the opinion evidence to support the decision, but the record establishes no basis for fully crediting the physician's statement.  First, the record doesn't establish the physician as treating physician.[30] The physician saw Pfeiffer once during the challenged time period.  Second, the physician's treatment note does not support his opinion.  The physician documented

---

[27]*Id*. at p. 575 (Apr. 13, 2012).

[28]*Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

[29]SSA record at p. 20.

[30]*See* 20 C.F.R. § 404.1527 (favoring treating-physician opinions, in part, because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)….").

Pfeiffer's complaints, but no medical findings supporting reported limitations.[31]  The physician's opinion reflects Pfeiffer's allegations.  The ALJ properly discredited Pfeiffer's allegations based on inconsistency statements.[32]  The opinion warranted little weight.[33]

**Substantial evidence supports the ALJ's determination about Pfeiffer's mental ability to work**.  Pfeiffer claims the ALJ over-stated her mental ability to work, but Pfeiffer could have worked within the ALJ's parameters before age 55.  The ALJ required incidental interpersonal contact, tasks learned and performed by rote with few variables and little judgment, and simple, direct, concrete supervision. Pfeiffer is an educated woman who experienced situational stress.[34]  She described

---

[31]SSA record at p. 495 (healthy-appearing, well-nourished, well-developed, ambulating normally, no shortness of breath or wheezing, regular heart rhythm and rate, normal muscle strength and tone, no tenderness in neck, no swelling).

[32]*Compare id*. at p. 128 (claiming to be unable to work since Aug. 28, 2010) *with id*. at p. 47 (testifying that she has applied for numerous jobs).  *Compare id*. at p. 182 (reporting that she stopped working in Aug. 2010 because of her conditions) *with id*. at p. 354 (reporting that her job as a contract clinical nurse ended in Aug. 2010 when she applied for a full-time job).  *Compare id*. at p. 182 (basing disability on asthma) *with id*. at p. 465 (reporting 30-year history of smoking).  *Compare id*. at p. 353 (attributing flag on nursling license to removing husband from hospital) *with id*. at p. 647 (attributing the flag to suspicion of drug use).

[33]*See* 20 C.F.R. § 404.1527 (directing "controlling weight" if treating physician opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence").

[34]SSA record at pp. 647 & 682.

herself as her husband's primary care-giver.[35]  She worried about the effects of her

husband's lifestyle on his heart condition and fretted over the prospect her husband

losing his job.[36]  Pfeiffer claims she quit working because of her impairments, but she

lost her job for other reasons.[37]  A flag on her nursing license thwarted efforts to

obtain employment.[38]  She experienced financial hardship.[39]

According to two mental health experts, Pfeiffer could have done work

involving incidental interpersonal contact, tasks learned and performed by rote with

few variables and little judgment, and simple, direct, concrete supervision.[40]  Pfeiffer

---

[35]*Id*. at p. 44 (my husband is a class II heart patient and I am his care giver) & p. 648 (she is the primary care giver for husband with multiple health problems, including heart failure).

[36]*Id*. at p. 45 (husband continues to smoke), p. 353 (I'm watching my husband kill himself with cigarettes and booze), p. 647 (despite his physical condition, husband drinks excessively), p. 681 (husband faces job uncertainty) & p. 683 (still stressed over husband's job status) & p. 684 (she experiences anxiety over husband's job).

[37]*Compare id*. at p. 182 (reporting that she stopped working in Aug. 2010 because of her condition) *with id*. at p. 354 (reporting that her job as a contract clinical nurse ended in Aug. 2010 when she applied for a full-time job).

[38]*Id*. at p. 353 (stating that she has a flag on her nursing license because she took her husband away from a hospital that was letting him die; the flag prevents employment) & p. 647 (reporting that she lost her job at a hospital because she was suspected of taking drugs despite a clean drug screen; her license is now flagged, making it difficult to find employment).

[39]*Id*. at pp. 353, 414, 647 & 680.

[40]*Id*. at pp. 359 & 449.

was distraught during the mental diagnostic evaluation, but she demonstrated no difficulty comprehending and carrying out simple and complex tasks.[41] She appeared to be impaired in her ability to communicate and interact with others,[42] but the ALJ limited interpersonal contact. She had difficulty in maintaining concentration,[43] but the ALJ required work that is done by rote. As her husband's primary care giver, Pfeiffer was likely capable of more demanding work, but at a minimum, she could do the type of work the ALJ required.

**Vocational evidence supports the decision**. After determining a claimant's ability to work, the ALJ consults a vocational expert to determine whether work exists that the claimant can do. When the ALJ asked about available work, the vocational expert identified machine tender, inspector, and assembler.[44] These jobs show work existed that Pfeiffer could have done before age 55, regardless of whether such work existed where she lived, whether a job vacancy existed, or whether she would have been hired if she had applied for work.[45] Pfeiffer disagrees, but age is the reason she

---

[41]*Id*. at p. 355.

[42]*Id*.

[43]*Id*. at p. 356.

[44]*Id*. at pp. 51-52.

[45]42 U.S.C. § 1382c(a)(3)(B) (defining disability).

now receives disability benefits.

Chronological age is one of the vocational factors considered in determining whether a claimant is disabled, because age affects a person's ability to adjust to other work.[46]   Age was particularly important in this case because the Commissioner's regulations provide for special rules for claimants of who are age 55 or older and limited to sedentary or light work.   Under the special rules, the ALJ will find the claimant can make an adjustment to other work if she has skills that can transfer to other skilled or semiskilled work that she can do despite her impairment.[47]   The ALJ found that at age 55, Pfeiffer had no transferrable skills.   The ALJ then applied the applicable Medical-Vocational Guidelines rule for the new age category.   Under that rule, Pfeiffer was disabled.[48]

### Conclusion and Recommendation

A reasonable mind would accept the evidence as adequate to show Pfeiffer could work within the ALJ's parameters before age 55.   Substantial evidence supports

---

[46]20 C.F.R. §  404.1563(a) ("When we decide whether you are disabled…, we will consider your chronological age in combination with your residual functional capacity, education, and work experience.").

[47]20 C.F.R. §  404.1568(d)(4).   To be transferrable, other work must be so similar to the claimant's previous work that she would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. *Id*.

[48]20 C.F.R. pt. 404, subpt. P, app. 2, rule 202.06.

the ALJ's determination.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends denying Pfeiffer's request for relief (docket entry # 2) and affirming the Commissioner's decision.

Dated this 10th day of July, 2015.

_____
United States Magistrate Judge